## COMMONWEALTH v. NATHANS.

1. The guardians of the poor must make the complaint for desertion of wife and children under 6th section of the act of 1812.*
2. It should be before two magistrates.
3. And the guardians, not the Commonwealth, should be plaintiffs.    Per KENNEDY, J.
4. The right to hold to bail given to one magistrate *is* auxiliary to the proceeding before two justices.
5. One judge holding a court of quarter sessions has no jurisdiction of cases arising under the poor laws.
6. In my opinion, two judges of the Common Pleas are required to hold a court of quarter sessions.    Per KENNEDY, J.    Sed vide Commonwealth v. Martin, post, contrà.

CERTIORARI to the Quarter Sessions of Philadelphia.

*Jan.* 6, 7.—On the complaint of Elizabeth Pratt, charging the de-fendant with desertion of his daughter, and refusal to give her reason-able support, whereby she is likely to become chargeable to the county, one alderman issued his warrant, and the defendant was held to bail to appear at the quarter sessions.    The guardians of the poor presented their petition at the next term of the January Quarter Sessions, (1845,) stating the separation and desertion of his wife and two children, leav-ing them a charge, and praying maintenance.

It was agreed the complaint should be considered as originally entered for the desertion of the alleged wife and children.

Defendant denied the marriage.

The court ordered the maintenance, one judge only signing the order.    This, with the opinion annexed, was treated *as showing that* one judge only heard the cause ; a fact not denied ; the record, other-wise, did not show how many sat.

*H. M. Phillips* and *O. F. Johnson*, for defendants, made five points.

---

* This section appears not to be repealed by the general act of 13th June, 1836, Purd. Dig. 875, the 45th section of which excepts special provisions.  The material distinction is in allowing bail in the first instance, *as auxiliary to the proceeding* to be taken by one magistrate.  It will be found in Purd. Dig. 679, 680, ed. 1824.

1. The proceedings should have been before two justices. Act of 1812, sect. 6, 5 Sm. Laws, 391 ; 1814, sect. 5, 6 Sm. 136 ; 29th sect. Act 1836, Purd. Dig. 875 ; and if there be defect here, or in the next point, the court had no jurisdiction.

2. It should have been by the guardians. Same acts.

3. There was no previous warrant to ascertain whether he had property. Same acts ; 1 Serg. & Rawle, 239 ; 2 Serg. & Rawle, 365 ; 4 Serg. & Rawle, 505 ; 5 Serg. & Rawle, 112, 388.

4. A proceeding for alimony and divorce was the proper remedy under the act of 1817, Purd. Dig. 294.

5. There was no court having jurisdiction, one judge alone sitting. The constitution creates the tribunal by name, (art. 5, sect. 1 ;) and though the legislature may take away any part of the jurisdiction, and vest it in another court, or create new courts, they cannot alter the organization of the court. There are, then, two questions : 1st. How is the court organized ? The 7th sect., art. 5, declares it to be composed of the judges of the Common Pleas, any two of whom shall be a quorum. The 3d sect. has reference to the Common Pleas alone ; and the fact that the same judges sit in both courts is immaterial. The 2d is, In what court has the jurisdiction of the present case been vested ? Is it a new court created by the legislature, or is the jurisdiction of the constitutional court merely extended to embrace it ? The latter. The act of 1840, sect. 7, Pamph. Laws, 61, vested this power in the court created thereby.

By the act of 1843, Pamph. Laws, 8, that court was abolished, and by the 1st sect. this jurisdiction transferred, not to a new court, but to the court then established under the constitution. Zeppon's Case, Law Journ., June 1845, 362. Hence it follows that the order was not made by a court duly constituted. The counsel proceeded to argue the case upon the evidence below. But when the other side came to reply, the court declined hearing them, stating the evidence had properly no place on the record.

*J. Murray Rush* and *J. Hanna,* contrà.—1st. The exception should have been taken below ; after trial on the merits, it is too late. 2 Watts, 43. 2d. This was a mere clerical error ; the complaint was, in fact, made by the guardians, and we could have, and would now prove it ; besides, the agreement was a waiver. 3d. The warrants may issue independently ; the object being to compel a party having no property, to pay out of his earnings. Act 1771, sect. 30, 1 Sm. 345 ; 1803, sect. 30, 4 Sm. 50. 5th. The act of 1840 allowed one judge

to sit, and the same right is given by that of 1843. This point was decided in Zeppon's Case.

*Jan.* 12. KENNEDY, J.—It is claimed by the counsel on the part of the Commonwealth, that the proceeding, in this case, was commenced and carried on under and in pursuance of the provisions contained in the act of the 31st of March, 1812, 5 Sm. Laws, 393; and particularly in the sixth section of that act. After reciting that " it sometimes happens that men separate themselves, without reasonable cause, from their wives, and desert their children; and women also desert their children, leaving them a charge on the said city, district, and township, although such persons may have estates, rights, and credits, which should contribute to the maintenance of such wives or children : It is therefore enacted, that it shall and may be *lawful for the guardians of the poor,* in the said city, district, and township, having first obtained a warrant or order from two aldermen of the said city, or from two justices of the peace of the county, residing in the said district or township where such wife or children shall be left or neglected, *to take and seize so much of the goods and chattels, rights and credits, and receive so much of the annual rents and profits of the lands and tenements of such husband, father, or mother, as such two aldermen or justices shall order and direct,* for providing for such wife, and for maintaining and bringing up such child or children, which *warrant or order being confirmed at the next Mayor's Court for the city, or Quarter Sessions for the county, it shall and may be lawful for the* said court there to make an order for the guardians of the poor to dispose of such goods and chattels, rights and credits, by sale or otherwise, or so much of them, for the purpose aforesaid, as the court shall think fit, to receive the rents and profits, or so much of them as shall be ordered by the said court, of his or her lands and tenements, for the purposes aforesaid, *and if no real or personal estate, rights and credits of such husband, father, or mother, can be found, wherewith provision may be made as aforesaid, it shall and may be lawful to and for the said court to order the payment of such sums as they shall think reasonable, for the maintenance of any wife or children so neglected,* and commit such husband, father, or mother, to the common jail, there to remain until he or she comply with the said order, *give security for the performance thereof, or be otherwise discharged by the said court ;* and on complaint made to any alderman of the city of Philadelphia, or to any justice of the peace residing in the district of Southwark, or township of the Northern Liberties, of any wife or children therein being so neglected, such alderman

or justice shall take security from the husband, father, or mother neg-
lecting as aforesaid, for his or her appearance at the next Mayor's Court
or Court of Quarter Sessions, *there to abide the determination of the said
court,* and, for want of security, to commit such person."

The first error assigned is, that the complaint was not made by the
guardians of the poor, in the city of Philadelphia, but by a certain
Elizabeth Pratt, who by law had no duty or trust to perform whatever
in regard to the matter. It is unquestionably made the duty of
the guardians of the poor, of the city, to attend to the poor therein,
and to provide relief for such as become chargeable and are unable to
provide for themselves, as also to attend to those who are deserted,
and left without the means of support and maintenance, by those whose
duty it is, by law, to provide in this respect for them, and to compel,
if practicable, a reasonable maintenance to be furnished by those whose
duty it is to supply it. And for the purpose of enabling them to per-
form this duty, where wives are deserted, without reasonable cause,
and left destitute by their husbands, or children by their fathers or
mothers, who have the capacity and means of supporting and main-
taining such wives and children, it is perfectly obvious that the section
of the act of 1812, recited above, was passed. The guardians of the
poor, having first obtained a warrant or order from two aldermen, are
thereby expressly directed to act in the matter, and no others are so
authorized. They are first to obtain the warrant. How are they to
obtain it? Certainly by an application to the two aldermen for the pur-
pose. It would be improper and wrong for the aldermen to grant the
warrant, upon the application of any other person or persons, seeing the
act does not in terms authorize it. If any other person or persons
know the fact of wives or children being so left and neglected, and are
desirous that relief should be administered, as it is very natural they
should be, they may, and I would say, ought to inform the guardians
of the poor, that they may proceed to inquire and act in the case, if
requisite. But it is said, that it is only where the application is directed
to be made to two aldermen for a warrant or order, that the section
requires that the complaint shall be made by the guardians of the poor
of the city; and not where a single alderman is applied to, under the
last part of the section, to take security from the husband, father, or
mother, neglecting his wife, or his, or her children, as aforesaid, for
his or her appearance at the next mayor's court, or court of quarter
sessions, there to abide the determination of the said court, and, for
want of security, to commit such persons. It is true, that this part of
the section does not *expressly* say on whose complaint the alderman shall

act in such case, but it is abundantly clear, that it is auxiliary to the proceeding authorized by the first part of the section, and that the complaint must therefore be made by the same persons, the guardians of the poor of the city. And I am further of opinion, that security, under the last part of the section, ought only to be demanded by the guardians of the poor, or taken by a single alderman of the city, of the husband, &c., for his appearance at the next court, &c., where a warrant or order has been issued under the prior part of the section, by two aldermen, for seizing his personal, and the rents and profits of his real estate, and no, or sufficient, real or personal estate cannot be found; for it would seem, that it is only when such real or personal estate cannot be found, that it is made lawful for the court to order the payment of such sums as they shall think reasonable for the maintenance of any wife or children so neglected, and to commit such husband, &c., to the common jail, there to remain until he, &c., comply with the said order, give security for the performance thereof, or be otherwise discharged by the said court. Indeed, it is repugnant to the genius and spirit of our laws, that a man's body should be taken and held in confinement, for the non-payment of money, without its appearing that sufficient property belonging to him cannot be found, out of which to make it. Besides, I would say, that the guardians of the poor, &c., ought to be named as the plaintiffs or complainants in every such case as the present, and not the Commonwealth, as here. In the Overseers of the Poor v. Smith, 2 Serg. & Rawle, 363, it was held unnecessary that there should be a binding over of the husband to answer to the complaint of the overseers of the poor; and it may fairly be inferred, from what Chief Justice Tilghman says, that it ought not to be done without cause being first shown for it. So a recognisance, entered into by the husband on the application of the wife *alone*, and complaint that he had deserted her, was held bad. Com. v. Hill, (mayor's court,) 2 Bro. 212.

After what has been said, it is unnecessary to notice the second error further, which is, that "the complaint ought to have been made before two magistrates."

The third error is, that the proceedings were before one judge only, who, according to the provisions of the constitution of the state, could not hold a court of quarter sessions; and that the matter was only cognisable in the court of quarter sessions of the city and county of Philadelphia. The seventh section of the fifth article of the constitution is here alluded to; which declares that, "The judges of the court of Common Pleas of each county, any two of whom shall be a quorum,

shall compose the court of quarter sessions, of the peace, and Orphans' Court thereof." But it is said, this was only to be so "until otherwise directed by law," according to the first clause of the third section of the same article: and that the same has been altered by the seventh section of an act passed the 25th of February, 1840, Pamph. L. 62, 63. A new court for the trial of crimes and misdemeanors committed in the city and county of Philadelphia was established by this act, called by the name of "The Court of General Sessions for the City and County of Philadelphia." The seventh section enacts that "any one of the judges of the court thereby created, shall have power and authority to hold the said court for the trial of all indictments, (excepting as aforesaid in cases of homicide, when as aforesaid there shall be two of the said judges;) and also for the passing of sentences, and for the adjudication of cases of breaches of the peace, master and apprentice, and *such as may arise under the poor laws;*" and although this court, thus created, was abolished by an act of the 3d of February, 1843, yet the first section of this latter act vested all the powers, jurisdiction, and authority, given to it, in the court of oyer and terminer, general jail delivery, and court of quarter sessions of the peace, in and for the city and county of Philadelphia. And further, by the fourth section thereof it is enacted, that "any one of the judges of said court (the last-mentioned court) shall have full power and authority to hold said court for the trial of all indictments, except in cases of homicide, when there shall be two of the said judges, and also for the passing of sentences, and for the adjudication of cases of breaches of the peace, master and apprentice, for the punishment of all contempts, and to make such orders or decrees, and render all such judgments as he shall consider legal and equitable in such cases as he has jurisdiction." It is contended, that these last words, "in such cases as he has jurisdiction," gave to the judge, by whom this case was decided below, full power and authority to determine it. This would certainly be straining their meaning beyond what must be considered the intention of the legislature. For if the legislature had intended to include cases *arising under the poor laws,* why should they have omitted to transcribe the words they used for that purpose in the act of 1840, after transcribing the several provisions immediately preceding? The only rational answer that can be given is, that they did not intend that cases arising *under the poor laws* should be adjudicated by a single judge, holding a court of quarter sessions of the peace; especially as I must say for myself, that in my humble opinion, the constitution requires that two of the judges, at least, of the Common Pleas, shall be necessary to

constitute and hold such court. But we are all satisfied that the learned judge before whom the case was tried had no power or authority, under any act of Assembly in force, to do so; and that the judgment and proceeding must be quashed on this ground, even if there were no other: though I must say that other errors seem to be presented by the record, but seeing they are not assigned for error, it is unnecessary to notice them.

The remaining errors assigned, are either such as go to the merits of the case, or such as are dehors the record, and, therefore, cannot be inquired into on a writ of certiorari.

The judgment and proceedings of the court below are quashed.